972 F.2d 343
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Paul Anthony GIBSON, a/k/a Shorty, Defendant-Appellee.
 No. 91-5606.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 6, 1992
Decided: August 24, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CR-90-149-N)
 ARGUED: Albert David Alberi, Special Assistant United States Attorney, Virginia Beach, Virginia, for Appellant.
 Eileen Anita Olds, Chesapeake, Virginia, for Appellee.
 E.D.Va.
 Vacated and Remanded.
 Before HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The government appeals the sentence imposed on Paul Gibson for his convictions on a single conspiracy count, two robbery counts, and two counts of use of a firearm in the commission of a crime of violence. We hold that the district court erred in failing to impose the statutorily-mandated sentences for the firearm convictions, and, therefore, we vacate the sentence and remand for resentencing.
 
 I.
 
 2
 Paul Gibson and four cohorts robbed four banks in Virginia over a span of two weeks. A firearm was involved in each robbery. Gibson entered into a plea agreement under which he agreed to plead guilty to conspiracy to commit armed robbery, in violation of 18 U.S.C. § 37, two counts of armed robbery, in violation of 18 U.S.C. § 2113(d), and two counts of use of a firearm in the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1). He also agreed to "fully and truthfully cooperate with the United States and disclose all information with respect to the activities of himself and others relating to violations of federal and state laws[,] and [to] ... truthfully testify at any grand jury, trial, or other proceeding with respect to any such matters."
 
 
 3
 After the guilty plea was accepted, but prior to the imposition of sentence, Gibson testified for the defense at the trial of Boone, one of his coconspirators. His testimony was inconsistent with that of the other two cooperating coconspirators, and it tended to exonerate Boone. Boone was found guilty on all counts.
 
 
 4
 In her presentence report, the probation officer calculated a guideline range of 155-188 months for the conspiracy and robbery counts. The underlying offense level of 29 included the addition of two levels for obstruction of justice arising out of Gibson's purportedly false testimony at his coconspirator's trial. See U.S.S.G. § 3C1.1 (Nov. 1990). In addition to the guidelines sentence, the probation officer noted that the firearms convictions carried mandatory consecutive terms of five years for one and twenty years for the "second or subsequent" conviction. See 18 U.S.C. § 924(c)(1).
 
 
 5
 At the beginning of the sentencing hearing, the district court judge opined that the robberies were "all part of a wild spree that had to do with the acquisition of cocaine and other narcotics," and he expressed his intention to end up with a sentence of "about 25 years," notwithstanding the much lengthier sentence apparently required by the guidelines and the firearms statute. The court reached its predetermined result by a decidedly unorthodox method. First, Gibson was sentenced to five years on the conspiracy count. Second, the court, again characterizing the robberies as "really one considered act," imposed a single consecutive fifteen year sentence for the two robbery counts. Finally, the court considered the facts underlying both firearms counts as "one activity" for the purposes of sentencing, and imposed only a single additional five-year consecutive sentence. The government appeals.
 
 II.
 
 6
 The government raises two issues on appeal, one involving the interpretation of a guidelines provision, and the other involving the court's authority to avoid imposition of statutorily-prescribed sentences. Our first task, however, is to unravel the guidelines portion of Gibson's sentence.
 
 
 7
 The probation officer determined that the conspiracy and robbery convictions yielded a total offense level of 29, including 2 points for obstruction of justice. A substantial criminal history placed this factor at VI, and the resulting guideline range was 151-188 months. Neither party made any objection to this report.
 
 
 8
 At the sentencing hearing, the judge initially stated that "the Court is in agreement with the probation officer's recommendation that there be no additional points added for obstruction of justice;" thus, we can assume that an offense level of 27, (with a resulting range of 130-162 months) was the court's starting point. The court, however, seems to have abandoned the guidelines thereafter in arriving at a "guidelines sentence" of 240 months. The court first sentenced on the conspiracy charge alone to the five-year maximum permitted under 18 U.S.C. § 371, and then imposed a single fifteen-year sentence on the robbery counts, to be served consecutively to the conspiracy sentence. Contrary to the probation officer's recommendation, the court did not group the conspiracy and robbery counts. See U.S.S.G. § 3D1.3.
 
 
 9
 The sole guidelines issue raised by the government in its appeal involves the district court's stated refusal to add two offense levels for obstruction of justice, but we are unable to discern how this factor played any role whatsoever in the sentencing.[1] In fact, after the sentence was first announced, the probation officer apparently reminded the court that she had actually recommended adding two points for obstruction of justice. The court, without making any adjustment to the sentence, merely announced that "let the record reflect that ... I disagree with the probation officer and [the government] and have now added two points for the obstruction of justice." Despite this express ruling, the combined sentence imposed for the robbery and conspiracy convictions (240 months) exceeds by fifty-two months the maximum sentence calculated with the inclusion of the two obstruction points. The government nevertheless raises the obstruction issue in its appeal, although we are not sure why. In any event, because resentencing is required, we will address the point.
 
 
 10
 The government argues that Gibson perjured himself at coconspirator Boone's trial, and, therefore, he falls squarely under § 3C1.1 (Nov. 1990):
 
 Obstructing or Impeding Proceedings
 
 11
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of jus tice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 12
 As we noted above, we are uncertain what the district court found or how it ruled with regard to obstruction. Nevertheless, we hold that any perjury that Gibson may have committed during the trial of another does not, as a matter of law, qualify as obstruction of justice "during the investigation, prosecution, or sentencing of the instant offense." (emphasis added). The trial of Gibson's coconspirator, which began after Gibson had pleaded guilty, simply did not involve the "instant offense," a term that refers to Gibson's offense of conviction. On remand, no points under § 3C1.1 should be added to Gibson's offense level.[2]
 
 III.
 
 13
 The firearms convictions are subject to mandatory sentences under 18 U.S.C. § 924(c)(1):
 
 
 14
 Whoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years.... In the case of a second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.... Notwithstanding any other provision of law ... the term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment....
 
 
 15
 Gibson pleaded guilty to, and was convicted of, two separate § 924(c)(1) offenses. The district court, as it did with the two related robbery convictions, considered the firearm convictions as "one activity," and, therefore, imposed a single five-year sentence. The government now questions the court's authority to circumvent the enhancement provisions of § 924(c)(1).
 
 
 16
 The government argues for a strictly literal interpretation of § 924(c)(1): five years for the first conviction and twenty years for the second conviction. The counter-argument is that every § 924(c)(1) sentence requires a distinct predicate "crime of violence," and the determination of the number of such predicate "crimes of violence" is a factual issue that is not necessarily dependent on the number of convictions. Having agreed to plead guilty, however, Gibson precluded an attack on the validity of the second firearm conviction. We are faced with an anomalous situation: multiple convictions based on what the district court held to be, as a factual matter, a single criminal act.
 
 
 17
 Section 924(c) has generated a fair amount of litigation, and a consensus has been reached on some points:
 
 
 18
 (1) Multiple firearms involved in a single offense will not support multiple § 924(c)(1) convictions. United States v. Casey, 776 F. Supp. 272, 276 (E.D. Va. 1991) (collecting cases).
 
 
 19
 (2) A conviction for an underlying crime of violence (or drugtrafficking crime) is not a prerequisite to a § 924(c)(1) conviction; it is only necessary that a firearm was used or carried in relation to a crime of violence for which the defendant could be prosecuted in federal court. United States v. Munoz-Fabela, 896 F.2d 908, 910 (5th Cir.), cert. denied, 111 S. Ct. 76 (1990); United States v. Davis, No. 91-5257 (4th Cir. 1992) (unpublished).
 
 
 20
 (3) The enhancement provisions of § 924(c)(1) apply even if the second firearm offense is charged in the same indictment as the first; in other words, "second or subsequent conviction" means nothing more than "another conviction." United States v. Raynor, 939 F.2d 191 (4th Cir. 1991), (joining the majority of circuits in expressly rejecting the argument that the enhancement only applies to a conviction for an offense that was committed after an earlier § 924(c)(1) conviction); contra United States v. Abreu, 962 F.2d 1447, 1453 (10th Cir. 1992) (en banc) ("[E]nhanced sentence is only proper when the underlying offense has been committed after a judgment of conviction on the prior section 924(c) offense."), pet. for cert. filed, No. 92-67 (July 6, 1992).
 
 
 21
 The fundamental issue in the instant case can be stated as follows: Is a court's factual determination during the sentencing phase that the defendant has committed only a "single crime of violence" ["Whoever, during and in relation to any crime of violence ... uses or carries a firearm, shall ... be sentenced to imprisonment for five years ... "] independent of legal determinations made during the guilt phase, i.e. multiple convictions under § 924(c)(1) ["In the case of his second or subsequent conviction, such person shall be sentenced to imprisonment for twenty years ... "]. Our own precedent, though less than crystal clear, suggests that the government's position is correct.
 
 
 22
 In United States v. Luskin, 926 F.2d 372 (4th Cir.), cert. denied, 112 S. Ct. 68 (1991) [Luskin II ], we were confronted with a defendant's argument that his three § 924(c)(1) convictions should have resulted in three concurrent sentences because only a single underlying "crime of violence" was involved.[3] Although Luskin was also convicted of three counts of causing a coconspirator to travel interstate with the intent to kill Luskin's wife, in violation of 18 U.S.C. § 1952A, he argued that his underlying offense actually constituted only a "single episode of criminal conduct," that of commissioning his wife's murder. The argument was rejected, but not on the clear-cut ground that each subsequent § 924(c)(1) conviction must result in an enhanced sentence.[4] Instead, we noted that we had held in Luskin I that his coconspirator's three separate attempts to murder Mrs. Luskin were attributable to him under Pinkerton v. United States, 328 U.S. 640 (1946). The implication of this discussion is that the mere existence of unquestioned § 924(c)(1) convictions is not the end of the sentencing inquiry. That we felt it necessary to find three separate underlying "crimes of violence" implies that a different factual finding on the issue might call for a different result with regard to the § 924(c)(1) sentences.
 
 
 23
 Notwithstanding the implications raised by Luskin I, Raynor 's emphasis on the "plain meaning" of phrase"second or subsequent conviction" convinces us that § 924(c)(1)'s enhancement provision may not be so avoided in the face of separate convictions. Id., 936 F.2d at 193. Accordingly, we vacate the sentence and remand for further proceedings consistent with this opinion. On remand, the district court should calculate the guidelines sentence for the conspiracy and robberies without the addition of two offense levels for obstruction of justice. Also, the district court is directed to impose consecutive sentences of five and twenty years for the two firearm convictions.[5]
 
 VACATED AND REMANDED
 
 
 [1]
 With the obstruction-of-justice points, the range (based on a total offense level of 29) is 151-188; without the points, the range is 130-162 months. The sentence on the substantive robbery counts alone was 180 months
 
 
 [2]
 On remand, the sentencing court should explain its decision to not adopt the probation officer's recommendation that the conspiracy and robbery counts be grouped under U.S.S.G. § 3C1.2(b). If the ultimate sentence was the result of a departure, then the parties should be given prior notice, and the basis for departing should be explained. Burns v. United States, 111 S. Ct. 2182, 2185 n.4 (1991)
 
 
 [3]
 Luskin was sentenced to three five-year terms on the § 924(c) counts, to be served consecutively. The version of the statute then in effect called for consecutive ten-year sentences for each subsequent conviction, but the government did not cross-appeal. Gibson's single five-year sentence on the two § 924(c) convictions is the practical equivalent of two concurrent five-year sentences. The district court in Gibson and the appellant in Luskin II both employ a "single episode" rationale
 
 
 [4]
 The appeal of Luskin's convictions was decided prior to imposition of sentence. United States v. Luskin, 885 F.2d 867 (4th Cir. 1989) (table), cert. denied, 494 U.S. 1079 (1990). Thus the court in Luskin II was dealing with multiple § 924(c)(1) (and § 1952A) convictions of unassailable validity. Likewise, in Gibson's case, no attack has been made on the legality of the robbery and firearm convictions
 
 
 [5]
 The district court's decision to impose a sentence of no more than twenty-five years was prompted in part by a lengthy state sentence that had been imposed only a month before Gibson pleaded to the federal charges. Inasmuch as the state convictions also involved bank robberies, the district court may be able to impose a concurrent federal sentence pursuant to U.S.S.G. § 5G1.3(b) and thereby accomplish its aim to some degree